**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0627-24

PATRICIA GUTHRIE,

     Plaintiff-Appellant,

v.

PEMBERTON TOWNSHIP
PLANNING BOARD and
PEMBERTON-2, LLC,

     Defendants-Respondents.

_____

        Argued January 6, 2026 – Decided July 9, 2026

        Before Judges Gooden Brown and DeAlmeida.

        On appeal from the Superior Court of New Jersey, Law Division, Burlington County, Docket No. L-0042-24.

        Jeffrey M. Brennan argued the cause for appellant (Baron & Brennan, attorneys; Jeffrey M. Brennan, on the briefs).

        Joseph F. Mackolin, Jr., argued the cause for respondent Pemberton Township Planning Board (Dasti, McGuckin, McNichols, Connors, Anthony and Buckley, attorneys; Jerry J. Dasti, of counsel and on the brief; Joseph F. Mackolin, Jr., on the brief).

Yifan Lin argued the cause for respondent Pemberton-2, LLC (Winne Banta Basralian & Kahn, PC, attorneys; Michael J. Cohen, of counsel and on the brief; Yifan Lin, on the brief).

PER CURIAM

In this prerogative writs action, plaintiff Patricia Guthrie appeals from the October 1, 2024 Law Division order vacating a prior order that had granted her relief. Plaintiff's prerogative writs complaint challenged defendant Pemberton Township Planning Board's (Board) approval of defendant Pemberton-2, LLC's (Pemberton-2) development project application. Initially, the trial judge found the Board's decision approving the application arbitrary and capricious and vacated the attendant resolution in a July 18, 2024 order. The parties filed cross-motions for reconsideration. In its motion, Pemberton-2 argued the owner of a nearby lot, Lot 1, dedicated to the Township an easement necessary to provide an access road to the development project. Considering this new information, the judge vacated the July 18, 2024 order, reinstating the Board's approval and dismissing plaintiff's complaint. Plaintiff now appeals the judge's order granting reconsideration. We affirm.

2

A-0627-24

## I.

By way of background, in December 2022, Pemberton-2 filed an application with the Board for preliminary and final major site plan and subdivision approval for a project located in Pemberton's General Commercial/Light Industrial zoning district (the GCLI Zone). The 23.5-acre property, located at Block 797, comprised Lots 2.01, 2.04, 3.01, and 3.02. Pemberton-2 is the owner or contract purchaser of all the Lots. Pemberton-2's project sought to subdivide Block 797 into five separate lots to be individually developed with a one-story building for "light-industrial and office use," each ranging from 20,460 to 34,245 square feet. The application did not address or include Lot 1, a portion of which was later proposed to provide "alternative access to the site." Pemberton-2 is not the owner of Lot 1.

The Board held four public hearings on Pemberton-2's application between May and November 2023. As a result of concerns raised regarding the access road demarcated as a paper road, during the hearings, Pemberton-2's counsel indicated "a small corner of [] Lot 1 w[ould] be granting . . . a permanent easement to enhance [Pemberton-2's] access driveway." The easement was intended "to add additional right of way width to the existing public right of way owned by the Township, [and] to straighten out the roadway at the point where

it intersects with Birmingham Road."  The application proposed to build the roadway extension to Township specifications and then dedicate the entire roadway to the Township.

Following the hearings, in December 2023, the Board adopted Resolution P-20-2023 (the Resolution), which granted "preliminary and final major site plan and subdivision approval together with certain variance relief" to Pemberton-2 for the Block 797 project.[1]  As to the "variance relief," the Resolution specified:

> [Pemberton-2] shall be permitted a [v]ariance with respect to the proposed access off Birmingham Road, to permit the proposed street to remain private; whereas, a public road designation is required, pursuant to the requirements set forth for the GCLI Zone under § 190-24 of the Township of Pemberton Zoning Ordinance.  In light of the Board's creation and approval of such [v]ariance, [Pemberton-2] has agreed to maintain the existing public right-of-way and all improvements therein for the Township in perpetuity, as if same were private property, pursuant to a separate written agreement between [Pemberton-2] and the Township to be made as a condition of the Board's approval.  However, the public right-of-way shall remain in place, as [Pemberton-2] will not be seeking a vacation of same.

---

[1] Notice of the Resolution was subsequently published in the Burlington County Times on December 15, 2023.

A-0627-24

On January 8, 2024, plaintiff, who resides on Birmingham Road, filed a complaint in lieu of prerogative writs against the Board and Pemberton-2. Plaintiff's complaint sought an order vacating the Resolution and "setting aside any and all approvals" granted in connection with the Resolution. Following a hearing, the judge entered an order and accompanying written opinion on July 18, 2024, granting plaintiff's application and setting aside the Resolution "as arbitrary and capricious."

At the outset, the judge summarized plaintiff's contentions as follows:

> Plaintiff argues this [c]ourt should invalidate and set aside [the Resolution] for three reasons; first, because the [a]pplication required a use variance to permit off-site access which the Board lacked jurisdiction to grant, second, because the [a]pplication lacked the consent of all owners of the properties in the proposed development, it was fatally flawed, and third, that [Pemberton-2] had no cognizable interest, legal or equitable, in two . . . of the properties proposed for development and therefore lacked standing to submit an application as a "[d]eveloper" under the [Municipal Land Use Law (MLUL), N.J.S.A. 40:55D-1 to -171].

The judge concluded the Board "acted in an arbitrary and capricious manner in authorizing [Pemberton-2] to use any portion of Lot 1 as part of its access drive" because to do so required a use variance, which the Board lacked jurisdiction to grant. Relying on <u>Nuckel v. Borough of Little Ferry Planning</u>

Board, 208 N.J. 95 (2011), and New Jersey Transit Corp. v. Franco, 447 N.J.

Super. 361 (App. Div. 2016), the judge explained:

> [T]he plain language of "accessory use" as defined in the Township Zoning Ordinance controls. The definition of accessory use requires that such a use . . . be located on the same property it serves. Placing the access drive partially on Lot 1 does not comply with this requirement and constitutes a second principal use on Lot [1] that could only be approved by a use variance.

In addressing the contention the application lacked the consent of the

property owner, the judge noted:

> Notwithstanding the lack of clarity in the record about ownership,[2] th[e] case does not turn on [Pemberton-2]'s lack of consent from the [o]wner of Lot 1 for the [a]pplication. His ownership interest does not change the need for a use variance, but rather only provides standing necessary to bring any application at all.

Turning to the standing argument, the judge found Pemberton-2 "had

minimal standing as a '[d]eveloper' to pursue the [a]pplication as to the [s]ubject

[p]roperty" but "cannot meet the definition of '[d]eveloper' under the MLUL[]

---

2  The judge pointed out that although there was some evidence presented of common ownership of the subject property and Lot 1, Pemberton-2's expert had indicated "Lot 1 [was] in fact 'owned by a different entity . . . with different economic interests.'"

and lacked standing to pursue the [a]pplication as to Lot 1." The judge instructed:

> [Pemberton-2] has two choices—one, [it] can forgo the sliver of Lot 1 as currently situated for the access driveway and proceed with building the warehouses in compliance with all the remaining conditions imposed by the . . . Board which do not implicate the need for a use variance. The [c]ourt would allow a limited remand for this purpose so that the Board can amend [its] Resolution consistent with this [o]pinion. In the alternative, if [Pemberton-2] want[s] to include the sliver of Lot 1 in [the] plans, then because the approval granted by the Board was arbitrary and capricious, and is vacated, [Pemberton-2] would need to apply to the Zoning Board of Adjustment, and request a "D" variance to include the sliver of Lot 1, and if granted, proceed to obtain final site plan approval.

Unbeknownst to the judge, on June 10, 2024, the owner of Lot 1 granted the Township a perpetual deed of easement for right-of-way access and construction over the portion of its property Pemberton-2 planned to use for part of its access road. The easement was executed ten days after Pemberton-2's trial brief deadline of May 31, 2024.

Subsequently, all three parties moved for reconsideration of the judge's July 18, 2024 order. Plaintiff argued the judge "overlooked" Pemberton-2's lack of standing because it "did not demonstrate any legal or equitable interest in developing the paper street," and "the remand instructions improperly divest[ed]

7

the . . . Board of decision-making authority, and as such [were] violative of the MLUL and its caselaw progeny."

The Board argued the judge

> overlooked the principle of land use in New Jersey which provides that a public access paper street owned by a municipality is not an accessory use, but is [a] public right of way, and that the portion of Lot 1 which was needed to straighten out the public street for ingress and egress was required by the approving Resolution to be dedicated to the municipality, not [Pemberton-2], and that no variance was required to accept the dedication of a right of way easement for public road improvements.

The Board further argued the MLUL and caselaw allow a Board to grant conditional approval so long as the applicant can "satisfy those conditions prior to obtaining a building permit, including conditions requiring obtaining easements from non-parties."

Pemberton-2 argued the reasoning behind the July 18 decision was "moot[] because the owner of Lot 1 granted an easement over the portion of its property [Pemberton-2] planned to use for part of its access road." It further argued the judge "overread" Nuckel and Franco by "failing to distinguish between accessory uses on private property, discussed in those cases, and the public right of way in the instant matter."

A-0627-24

The judge heard argument on the motions on October 1, 2024. In discussing the easement, the judge queried whether "the [T]own[ship] [would] accept the dedication," explaining:

> [T]he [c]ourt's objection in its previous opinion was until [the owner of Lot 1] . . . dedicate[d] this easement, it's private property. It's someone's land. And that requires a use variance. . . .
>
> . . . .
>
> . . . Now the easement has been conveyed to the Township eliminating that barrier. But the Township, when there's an easement, there's dedication and then there's acceptance. Two different things.

The Board agreed "the easement dedicated to the Township through a paper street which is going to become a road open to the public" would mean, if accepted, there were "no impediments" to the project and would "moot[] out that issue."

Following oral argument, in an October 1, 2024 order, "upon reconsideration," the judge vacated the July 18, 2024 order and denied "[p]laintiff's requested reliefs in its action in lieu of [p]rerogative [w]rit." In an accompanying written decision, the judge rejected plaintiff's arguments ad seriatim. As to standing, the judge stated:

> [T]he development of the paper street has been part of [Pemberton-2]'s plan from its inception, only the exact

route has not. Plaintiff cites no authority to support [her] assertion that [Pemberton-2] is required to demonstrate legal or equitable interest in the public right of way [Pemberton-2] planned to develop for its access drive. Extending that reasoning to its logical conclusion would lead to absurd results, where no developer could put forth a plan including a paper street or public way, and [p]laintiff's argument that [Pemberton-2] lacked standing must be rejected.

Addressing plaintiff's remand argument, the judge found "[p]laintiff had ample opportunity to respond [to the original site plan and road configuration]. In any event, it is moot, as the Board has indicated it would require a resubmission and a public hearing regardless."

Turning to defendants' arguments, the judge found defendants' assertions "that the [c]ourt was palpably incorrect in requiring a use variance from the zoning board for the portion of Lot 1 at issue," and that the court "improperly failed to accept the Board's Resolution conditioned on acquiring the consent of Lot 1's owner for right-of-way, because it was already a public right[-]of[-]way," were both "identical to their argument[s] in the first hearing." The judge again rejected the arguments as well as the contention that "[t]he [c]ourt . . . overread[]" Nuckel and Franco.

However, addressing the new information pertaining to the easement, the judge wrote:

[T]he easement documents seem to satisfy all aspects of the [requirements] and would, if accepted by the Township, render moot [p]laintiff's contention that the entire paper street is not a public right of way, for now it can be, and is then no longer subject to zoning restrictions. With this impediment removed, the [c]ourt finds the condition of acceptance [of the easement] by the municipality to be a reasonable one, and on . . . par with other acceptable conditions pursuant to [s]tatute[,] N.J.S.A. 40:55D-22[(b)], and cited caselaw.

"[N]o longer find[ing] that the Board acted in an arbitrary and capricious manner," the judge vacated her prior order and this appeal followed.

On appeal, plaintiff raises the following points for our consideration:

I. THE TRIAL COURT ERRED IN GRANTING DEFENDANTS' CROSS-MOTIONS FOR RECONSIDERATION BECAUSE THE . . . BOARD EXPRESSLY DIRECTED THAT ALL PROPOSED IMPROVEMENTS REMAIN PRIVATELY OWNED.

II. THE TRIAL COURT ERRED IN GRANTING DEFENDANTS' CROSS-MOTIONS FOR RECONSIDERATION BECAUSE PEMBERTON-2 LACKED STANDING TO BRING AN APPLICATION TO DEVELOP LOT 1.

II.

We review a trial court's ruling on a motion for reconsideration under Rule 4:49-2 for an abuse of discretion. Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021). An abuse of discretion arises when a decision is "made without a rational explanation, inexplicably departed from established policies, or rested

11

on an impermissible basis." Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002) (quoting Achacoso-Sanchez v. I.N.S., 779 F.2d 1260, 1265 (7th Cir. 1985)).

"[R]econsideration is a matter within the sound discretion of the [c]ourt, to be exercised in the interest of justice." Cummings v. Bahr, 295 N.J. Super. 374, 384 (App. Div. 1996) (quoting D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990)). Such a motion is not an opportunity to "expand the record and reargue a motion." Capital Fin. Co. of Del. Valley, Inc. v. Asterbadi, 398 N.J. Super. 299, 310 (App. Div. 2008).

As such, reconsideration is only appropriate where (1) "the [c]ourt has expressed its decision based upon a palpably incorrect or irrational basis," or (2) "it is obvious that the [c]ourt either did not consider, or failed to appreciate the significance of probative, competent evidence." Cummings, 295 N.J. Super. at 384 (quoting D'Atria, 242 N.J. Super. at 401). Further, "if a litigant wishes to bring new or additional information to the [c]ourt's attention which it could not have provided on the first application, the [c]ourt should, in the interest of justice (and in the exercise of sound discretion), consider the evidence." Ibid. (quoting D'Atria, 242 N.J. Super. at 401).

"When reviewing a trial court's decision regarding the validity of a local

12

board's determination," we are "bound by the same standards as was the trial court." Jacoby v. Zoning Bd. of Adjustment, 442 N.J. Super. 450, 462 (App. Div. 2015) (quoting Fallone Props., L.L.C. v. Bethlehem Twp. Plan. Bd., 369 N.J. Super. 552, 562 (App. Div. 2004)). Under that standard, the court will "give deference to the actions and factual findings of local boards and may not disturb such findings unless they were arbitrary, capricious, or unreasonable." Ibid.

"A board acts arbitrarily, capriciously, or unreasonably if its findings of fact . . . are not supported by the record," or if it "usurps power" not otherwise allotted to it. Ten Stary Dom P'ship v. Mauro, 216 N.J. 16, 33 (2013). "Basically, the reviewing court must determine whether the board . . . followed the statutory guidelines and properly exercised its discretion." Menlo Park Plaza Assocs. v. Plan. Bd. of Woodbridge, 316 N.J. Super. 451, 460 (App. Div. 1998).

Here, we discern no abuse of discretion in the judge's ruling granting reconsideration and denying plaintiff's requested relief. Plaintiff argues Pemberton-2's "proposed off-site access drive configuration necessitates a use variance" that it never applied for because the access road "partially crosses and occupies Lot 1," which "is owned by a different entity and is already improved with a large warehouse." Plaintiff submits under the Township's code, an "accessory use" must "be located on the same lot of the principal use which it

13

serves." She also contends "multiple uses [are permitted] on the same property . . . only when they occupy the same principal building." She asserts Pemberton-2 needed to obtain a "use variance," "which the . . . Board lacked jurisdiction to even consider, let alone grant." She contends the judge's ruling "effectively disregards the . . . Board's will" because the "Board clearly did not want . . . Pemberton-2's project to expand the right of way or result in any possible additional burden to the municipality."

On reconsideration, the judge "consider[ed] . . . the significance of probative, competent evidence," namely the easement.[3] Cummings, 295 N.J. Super. at 384 (quoting D'Atria, 242 N.J. Super. at 401). On June 10, 2024, the owner of Lot 1 dedicated to the Township "a perpetual easement for right of way access and construction purposes through, over, upon, under, in and across the [e]asement [p]roperty." The Township proposed an ordinance, Ordinance No. 46-2024, which would "authoriz[e] the acquisition of deed of easement for right of way access and construction upon [the] property." Pursuant to N.J.S.A. 40:55D-22, the Board has the authority to conditionally approve Pemberton-2's

---

[3] The judge noted although neither defendant "offer[ed] an explanation for waiting to tell the [c]ourt about the easement (beyond saying it was past their briefing deadline)," it was "in the interest of justice to consider the new information, particularly given the temporal proximity of the easement dedication and the motion for reconsideration."

project—here, conditioned on the passage of the ordinance accepting the dedication of the easement. See N.J.S.A. 40:55D-22(b) ("In the event that development proposed by an application for development requires an approval by a governmental agency other than the municipal agency, the municipal agency shall, in appropriate instances, condition its approval upon the subsequent approval of such governmental agency. . . .").

If the Township accepts the dedication of the easement, it will be a public road, not subject to the same zoning restrictions as a private road. In Franco, we distinguished private versus public roadways. There, the defendants sought to build a cul-de-sac to serve as parking for proposed apartment buildings on other lots. 447 N.J. Super. at 367. We held to do so would "require[] either a use variance for a private driveway or acceptance by [the town of the driveway] as a public street." Ibid.; see also Nuckel, 208 N.J. at 103-06 (holding that, under the relevant municipal ordinance, a driveway could not meet the definition of "accessory use" because it was not an accessory to the parcel it was located on and therefore required a use variance to benefit another parcel).

We differentiated the type of township approval required for a private versus a public road:

> Absent [the town's] acceptance of defendants' "dedication," defendants would "retain[] ownership" of

the . . . lots.  Twp. of Middletown v. Simon, 387 N.J. Super. 65, 75 (App. Div. 2006), aff'd in part, rev'd in part, 193 N.J. 228 (2008).  Thus, the proposed cul-de-sac would remain the private driveway of defendants, who "as the titleholder at all times had the right to use the property lawfully, subject, however, to the dedication."  Osterweil v. City of Newark, 116 N.J.L. 227, 231 (E. & A. 1936).  However, . . . a use variance would be required to use the . . . parcel lawfully as a private driveway.

Thus, [the town's] approval was necessary whether the cul-de-sac was private or dedicated for public use.  Indeed, it would be contrary to the purposes of the municipal regulation of land use to allow a party to escape the need to obtain a use variance by making an offer to dedicate which the municipality will not accept. . . .

Although ordinances accepting or rejecting an offer to dedicate a driveway as a public street are not "zoning ordinances," they reflect "zoning considerations."  Howell Props., Inc. v. Twp. of Brick, 347 N.J. Super. 573, 581 (App. Div. 2002).

[Franco, 447 N.J. Super. at 377 (first and third alteration added) (citation reformatted).]

Here, the owner of Lot 1 granted the easement and dedicated the road to the Township.  Under Franco, the Township must actually accept the dedicated easement.  Given the Board's position at the reconsideration oral argument, Pemberton-2 established a "reasonable probability of a zoning change," namely that the Township would accept the dedication, thereby eliminating the need for

16

a variance. See Franco, 447 N.J. Super. at 377 (holding that the "defendants were required to show a reasonable probability [the town] would either grant a use variance for the cul-de-sac or accept the dedication of the cul-de-sac as a public street") (citing Borough of Saddle River v. 66 E. Allendale, LLC, 216 N.J. 115, 119 (2013)). Therefore, the judge did not abuse her discretion in granting the motion for reconsideration.

Likewise, plaintiff's argument about the Board's will fails. Pemberton-2 previously agreed, as part of the Resolution, to "maintain [the roadway] on behalf of the Township." This obviates any maintenance concerns by the Township. Further, by granting reconsideration, the judge reversed her original finding that the Board acted arbitrarily and capriciously, effectively agreeing with the Board's decision.

Plaintiff further argues "Pemberton-2 filed its application without having an interest of any kind (legal or equitable) in Lot 1 where it proposed to construct a portion of its access drive." Although the judge initially found Pemberton-2 was not a "developer" under the MLUL because it had no interest in Lot 1, plaintiff now submits the judge "failed to account for this situation when addressing the reconsideration motions." Despite the owner of Lot 1 granting the easement for the road, plaintiff contends "Pemberton-2 never had standing

to bring an application involving any aspect of Lot 1 in the first instance."

"Whether a party has standing to pursue a claim is a question of law subject to de novo review," and an appellate court will "accord no 'special deference' to the 'trial court's interpretation of the law and the legal consequences that flow from established facts.'" Cherokee LCP Land, LLC v. City of Linden Plan. Bd., 234 N.J. 403, 414-15 (quoting Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)). Still, our courts "have long taken a liberal approach to standing in zoning cases." DePetro v. Twp. of Wayne Plan. Bd., 367 N.J. Super. 161, 172 (App. Div. 2004).

Under the MLUL, a developer is defined as "the legal or beneficial owner or owners of a lot or of any land proposed to be included in a proposed development, including the holder of an option or contract to purchase, or other person having an enforceable proprietary interest in such land." N.J.S.A. 40:55D-4. The MLUL defines an applicant as "a developer submitting an application for development," and defines an application for development as "the application form and all accompanying documents required by ordinance for approval of a subdivision plat, site plan, planned development, cluster development, conditional use, zoning variance or direction of the issuance of a permit" pursuant to statute. N.J.S.A. 40:55D-3.

Conditional use is defined as

> a use permitted in a particular zoning district only upon
> a showing that such use in a specified location will
> comply with the conditions and standards for the
> location or operation of such use as contained in the
> zoning ordinance, and upon the issuance of an
> authorization therefor by the planning board.

[Ibid.]

Here, Pemberton-2 currently has standing because it meets the criteria for a developer. As dictated by the MLUL, a development plan may contain a conditional use for a certain area of the proposed project. The Board approved Pemberton-2's project on the condition that it obtain the right to use Lot 1. Caselaw, like the MLUL, instructs that "a planning board may condition site-plan approval on the applicant's granting a right of way to another property owner." Kline v. Bernardsville Ass'n, 267 N.J. Super. 473, 481 (App. Div. 1993).

Under Kline, a planning board cannot "compel relocation of an easement so as to impair or burden the rights of a non-applicant," as this power "is reserved for the courts," ibid., but this does not prohibit a planning board from conditioning approval upon receipt of an easement. As the judge pointed out, accepting plaintiff's argument would essentially foreclose the concept of

approvals based on an interest in a public right of way, which are clearly accepted under the MLUL.

At the time Pemberton-2 submitted its application for development, it had no proprietary interest in Lot 1; in fact, Lot 1 was not even mentioned in its application. As a result, in the initial July 18, 2024 decision, the judge found Pemberton-2 lacked standing. However, on reconsideration, the judge accepted that Pemberton-2 cured any standing defect after the owner of Lot 1 dedicated an easement to the Township and vacated the original order to account for the easement.

Although our research has not uncovered any caselaw supporting the proposition that a developer may cure a standing defect after submitting an application for development, New Jersey caselaw supports a liberal interpretation of standing under the MLUL. See, e.g., DePetro, 367 N.J. Super. at 172. Further, both caselaw and the MLUL allow a planning board to grant a developer a conditional approval, so long as the condition is later satisfied. See N.J.S.A. 40:55D-3; Kline, 267 N.J. Super. at 481. Thus, we believe a liberal rather than a narrow approach to curing a defect in the application for development is justified under the circumstances presented here.

For the first time on appeal, the Board cites as "evidential in this litigation" "[t]he new fact and evidence that the Township will not adopt an [o]rdinance as requested by [Pemberton-2]." According to the Board, this new information shows Pemberton-2 "will never be able to meet the condition set forth in the Board's Resolution." The Board also submits Pemberton-2 has since filed a lawsuit against the Township and the Board, which "at least in part[] contests the denial by the Township to adopt the . . . [o]rdinance upon second reading" and "requests that the . . . condition be removed . . . so that it no longer is an impediment to [Pemberton-2] moving forward with the project."

The ordinance in question was passed upon first reading before the governing body but apparently did not pass the second reading on December 18, 2024. The ordinance would have granted to the Township the necessary easement to allow access to the project through Lot 1.

The Board did not file a cross-appeal. Although a respondent, without filing a cross-appeal, may argue "any point on the appeal to sustain the trial court's judgment," Chimes v. Oritani Motor Hotel, Inc., 195 N.J. Super. 435, 443 (App. Div. 1984), if the argument goes beyond the scope of the trial court's decision, it will not be entertained on appeal unless asserted within a separate cross-appeal, see Bogey's Trucking & Paving, Inc. v. Indian Harbor Ins. Co.,

395 N.J. Super. 59, 64 n.3 (App. Div. 2007).  Because the Board's argument goes beyond the scope of the judge's decision, we will not consider it.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hanley

Clerk of the Appellate Division

A-0627-24